## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**ECOTONE FARM, LLC and WILLIAM R. HUFF,**

        **Huff,**

  **v.**

**EDWARD A. WARD, et al.,**

        **Defendants.**

Civ. No. 2:11-5094

(KM)(MAH)

**AMENDED OPINION**

### KEVIN MCNULTY, U.S.D.J.:

This matter originally came before the Court on motions to dismiss the Second Amended Complaint ("2AC") (Docket No. 46), filed by the Defendants, New Jersey Conservation Foundation (Docket No. 47); Sally Ward (Docket No. 49); Marshall Bartlett, Regina Egea, Louis Lanzerotti, Nicholas Platt, James Rybka, Township of Harding, Harding Township Committee, and Edward A. Ward, II. (Docket No. 51); and Apgar Associates and Paul D. Fox (Docket No. 53). In an Opinion and Order filed June 30, 2014 (Docket Nos. 86, 87), the motions to dismiss were granted and the Second Amended Complaint was dismissed without prejudice to a properly supported motion to amend filed within 30 days.

Part of the basis for my June 30, 2014 decision was that certain claims were extinguished by *res judicata,* based on the parties' April 2011 Settlement Agreement and the dismissals of two prior state court litigations. I wrote that claim preclusion doctrines barred relitigation of claims against Harding that arose before the date of the settlement (the "pre-2011 claims"). Now, the Plaintiffs, Ecotone Farm, LLC and William R. Huff (collectively, "Huff") have moved for reconsideration. (Docket No. 88). In essence, Huff argues that my *res judicata* reasoning was incorrect because, as provided in the Settlement Agreement, one of the two dismissal orders was without prejudice, and therefore should not be regarded as a final judgment. On reconsideration, I find that, although the Settlement Agreement may preclude the pre-2011 claims,

1

that issue may present factual questions that cannot be decided on a motion to dismiss. I have revised my June 30, 2014 Opinion accordingly.

That revision has necessitated others. In the June 30 Opinion, having dismissed the claims insofar as they were based on pre-2011 allegations, I did not include them in my analysis of the other issues raised on the motions to dismiss. I have amended the opinion to do so. In particular, I have now included the pre-2011 allegations in my analysis of the qualified immunity issues. For the reasons stated in this Amended Opinion, the bases for dismissing the post-2011 allegations also require dismissal of the pre-2011 allegations. In short, a federal court is a singularly awkward and unsuitable forum for local land-use disputes like the one presented here.

This Amended Opinion should be deemed to supersede and replace my Opinion of June 30, 2014. It leads, however, to the same result. The Second Amended Complaint is dismissed in its entirety, without prejudice to the submission of a properly supported motion to amend within 30 days.

## I.    BACKGROUND

This case arises from a long-standing and regrettable dispute between neighbors. It concerns Plaintiff William Huff's efforts to renovate his home and two barns, which together with the surrounding property make up Ecotone Farm. Huff accuses the Defendants of misusing governmental power to interfere with his property rights and advance the private interests of his neighbors, Edward ("Ned") Ward and Sally Ward. The facts alleged in the 2AC are assumed to be true solely for purposes of this motion to dismiss.

### A. Parties

Plaintiff Ecotone Farm LLC is a commercial farm doing business on more than 31 acres of property in Harding Township, New Jersey. Plaintiff William Huff is a resident of Harding Township, a fee simple owner of the property, and the managing member of Ecotone Farm LLC. *Id.* ¶ 18. Huff and his family reside on the farm property. 2AC ¶ 17.[1]

Defendant Edward "Ned" Ward resides at 575 Tempe Wick Road, Harding Township, New Jersey. Ward is a member of the Township Committee (also named as a Defendant), which is the governing body of the Township. He has

---

[1]     Ecotone Farm LLC, wholly owned by Huff, is a separate Plaintiff in this case. For the sake of simplicity, I refer to the two Plaintiffs together as "Huff."

served as chair of the Township Personnel Committee. He is sued in his official and personal capacities. *Id.* ¶ 19. Defendant Sally Ward is his spouse. *Id.* ¶ 26.

Defendant Township of Harding ("Harding Township") is a municipality created under the laws of the State of New Jersey. *Id.* ¶ 20. Defendants Ward, Bartlett, Lanzerotti, Egea, Rybka, and Platt were elected members of the Township Committee at relevant times. They are sued in their official and individual capacities. *Id.* ¶ 22.

Defendant Fox is Harding Township's municipal engineer. He lives at 220 Lamerson Road in Chester, New Jersey. He is sued in both his official and personal capacities. *Id.* ¶ 23. Defendant Apgar Associates, located in Far Hills, New Jersey, is a civil engineering firm owned by Fox. *Id.* ¶ 24.

Defendant New Jersey Conservation Foundation ("NJCF") is a private foundation in Far Hills, New Jersey. *Id.* ¶ 25.

### B. Factual Allegations

This lawsuit follows a series of engineering reviews, notices of violation, state court proceedings, and other activities regarding property that Huff purchased on July 22, 1987 from the executor of the estate of Muriel W. Jarvis. *Id.* ¶ 28. Huff's property borders Jockey Hollow National Park on its western and southern sides. *Id.* ¶ 27.

Huff's parcel was once part of Jarvis's more extensive property holdings. Jarvis deeded about 132 acres of her property in Harding Township to NJCF. *Id.* ¶ 30. Ned Ward allegedly became close with Jarvis and assisted her in subdividing her property to create a home site for Ward's family. *Id.* ¶ 31. The Wards purchased approximately five acres from Jarvis at (according to Huff) a discounted price. *Id.* ¶ 32. The Wards' property had no direct access to a public road; instead the Wards obtained a limited ingress/egress easement for a driveway that ran across Jarvis's remaining property and connected to Tempe Wick Road. *Id.* ¶ 33.

Jarvis's will provided that her remaining property should be broken up into parcels "as large as reasonable." *Id.* ¶¶ 34-35. Ward, who is a real estate agent, allegedly encouraged the executor to sell the property and worked to find a suitable buyer. *Id.* ¶ 36. Ultimately, the executor agreed to sell the undivided property to Huff. The executor and charitable beneficiaries of Jarvis's will then engaged in litigation to determine whether that sale was consistent with the will or whether the property had to be further subdivided and sold. *Id.* ¶ 37.

New Jersey Superior Court Judge Stanton approved the sale to Huff, but imposed a conservation easement in favor of NJCF. *Id.* ¶ 37.

The conservation easement prevented further subdivision of the property. *Id.* ¶ 38. Huff alleges that it did not, however, create any rights or interests for Ward or any other party beyond the "very limited rights" for NJCF. *Id.* Huff also alleges that the easement specifically provided that certain activities on his property, such as renovation and repair of existing structures, would not be restricted. At the time, such structures included a main house and two barns. *Id.* ¶ 40. The easement, says Huff, was Ward's idea because Ward wanted to curb further subdivision or interference with the view from his property. *Id.* ¶ 41. Huff alleges that the Wards, Fox, and NJCF leveraged the easement to violate his property rights by impeding construction and allowing Fox and Apgar to profit from baseless engineering charges. *Id.* ¶ 6.

Since the purchase, Huff has used the property for agricultural and equestrian purposes, to grow hay, and to breed, raise and sell miniature donkeys. *Id.* ¶ 44. Huff alleges that these activities qualify Ecotone as a commercial farm that is protected by the New Jersey Right to Farm Act ("RFA"). *Id.* Huff also alleges that the RFA preempts "certain aspects" of Harding Township's municipal regulatory authority over the Property. For these aspects, he says, the Morris County Agricultural Board ("MCAB") would have regulatory authority. *Id.* ¶ 45.

This is not the first time that the Huffs and Wards have litigated their property issues. The 2AC mentions a litigation, settled in 1998, regarding the driveway to the property. *Id.* ¶¶ 47, 49. Huff alleges that a key term of that settlement (the "1998 Settlement Agreement") restricted each party from taking photographs or videos of the other, or of the other's property. *Id.* ¶¶ 49-50.

Huff alleges that Defendant Sally Ward began photographing his renovation activities. She continued to take photos for the next three years in violation of the terms of the 1998 Settlement Agreement and Order. *Id.* ¶¶ 61, 62. Huff alleges upon information and belief that the photos were taken to aid Ned Ward and Fox with their efforts to interfere with Huff's renovation. *Id.* ¶ 63. Further state court litigation ensued as to whether the Wards had complied with the anti-photography obligation. *Id.* ¶ 51. (Other state court litigation is described *infra*.)

Huff alleges that, in 2001 and 2002, Ward used the municipal authorities to harass Huff by making "anonymous" accusations that Huff was

performing unauthorized drainage work on his property and interfering with the conservation easement. *Id.*

In 2008, Huff started renovating one of the two original barns on the property. *Id.* ¶ 56. Beforehand, he obtained all necessary variances, zoning approvals, and construction permits. *Id.* He also submitted and obtained certification for a Soil Erosion and Sediment Control Plan as required by Harding Township. *Id.* Huff alleges that the terms of the conservation easement recognize Huff's right to maintain, replace, and operate the barns as "existing structures" on the Property. *Id.* ¶ 57. Huff also alleges that such renovation is proper because it is incidental to Huff's right to use the property for agricultural or equestrian purposes. *Id.*

Huff's renovations nonetheless allegedly inspired Ward to initiate "a series of harassing activities." *Id.* ¶ 58. Ward first attempted to impede the renovation by claiming that the construction activities impinged on his ingress/egress driveway easement, *i.e.,* his driveway. In November 2008, Ward complained to the Harding police department that the construction was making the driveway unsafe. *Id.* ¶ 59. He complained to the police department again in January 2009 that the construction activities were wrongfully blocking the driveway. *Id.* Huff alleges that, after these tactics failed, Ward turned to Fox. *Id.* ¶ 60.

Huff alleges that Fox, Apgar Associates, and NJCF all had motivations for aiding the efforts to interfere with Huff's property rights. Fox and his firm, Apgar, had a long professional and personal relationship with Ward, as did Fox's father, the former Harding municipal engineer Robert Fox. *Id.* ¶ 64. Huff alleges that Fox and Apgar received substantial referral business from Ward in his capacity as a Harding real estate broker. *Id.* Fox and his firm also reaped huge financial benefits from Fox's position as municipal engineer. *Id.* ¶ 65. In addition, Apgar's website named NJCF as a representative client. *Id.* NJCF allegedly sought to avoid the expense of hiring its own counsel, relying instead on Harding Township to enforce NJCF's interpretation of the conservation easement. *Id.* ¶ 66. By aligning with Fox and Harding Township, Huff alleges, NJCF would maximize its influence over the property. *Id.*

Internal emails from Harding Township allegedly reveal that, in January 2009, Ward provided Fox with numerous court and settlement documents from the egress/ingress litigation between the Wards and Huff regarding the

driveway. *Id.* ¶ 67.[2] Fox reviewed these documents, conducted his own legal analysis, and shared his conclusions with various Harding Township officials, including the Township attorneys. *Id.* ¶¶ 67-68.[3] In his correspondence, Fox stated that his approval of Huff's renovation plans could be conditioned on Ward's permission, because the settlement gave Ward certain rights with respect to the driveway area. *Id.* ¶ 68. Huff alleges that the documents had no relevance to Fox's engineering review and served only Ward's private interests. *Id.* ¶ 69.

NJCF also contacted Huff regarding his renovation. *Id.* ¶ 70. The work required temporary storage of soil from excavation of the foundation, the temporary staging of new building materials and supplies, and storage of construction equipment at the edge of the hayfield immediately south of the barn ("Storage Area 1"). *Id.* ¶ 71. As the project progressed, a portion of the property at the edge of the hayfield immediately west of the barn was also used for storage ("Storage Area 2"). *Id.* Storage Area 2 was located within the conservation easement. *Id.* ¶ 72. In January 2009, NJCF sent Huff a letter stating its position that Huff's activities in Storage Area 2 violated the terms of that conservation easement. *Id.* ¶¶ 72, 74. A copy of that letter was sent to Fox. *Id.* ¶ 74.

On March 11, 2009, Fox sent an engineering review letter to Huff stating that Huff's previously certified Soil Erosion and Sediment Control Plan needed to be revised to incorporate Storage Area 2 and "depict the full extent of the existing disturbance on site." *Id.* ¶ 73. The letter stated that Fox and Harding Township could not approve any driveway improvements that fell within the conservation easement and the ingress/egress easement granted to Ward. Huff alleges that Fox "falsely and improperly claimed" that such improvements could only be carried out "by individuals with deeded rights to the ingress/egress easement"—meaning Ward. *Id.* ¶ 75. With respect to the

---

[2]   The 2AC does not specify if Plaintiffs learned of this from prior litigation against the Township or from other sources.

[3]   Fox's conclusions were that (1) the 1998 settlement provided that the Wards' driveway was to remain "as is" and that any drainage improvement work contemplated by Huff had to be approved by Ward; (2) in a 2001 transcript, Huff's and Ward's attorneys stated that Ward had the exclusive right to maintain the driveway and that Huff had no authority to make alterations to the easement; (3) a 2001 decision (in a separate action regarding the 1998 settlement) concluded that Ward had complied with the terms of the 1998 settlement, and Huff's appeal of that decision was unsuccessful. 2AC ¶ 67.

driveway improvements that fell outside the conservation easement but within Ward's ingress/egress easement, Fox required that Huff demonstrate that there were "no legal impediments" to performing the work "as a result of prior court settlements with deeded ingress/egress easement holders" (again meaning Ward). *Id.* The letter also instructed Huff that his plans must "include a note stating that the driveways leading to the other residences may not be blocked *at any time* and that *continuous access* to both residences (beyond the barn) must be maintained." *Id.* ¶ 77 (emphasis in 2AC). Fox also wrote that the sidewalk had to be kept clean of mud. *Id.* ¶ 79.

Huff alleges that this letter constitutes evidence of Fox's efforts to use his municipal authority to advance the interests of Ward, as well as those of NJCF. *Id.* ¶¶ 75, 77. Huff also alleges that compliance with the requirement of continuous access was "functionally impossible," and thus that Fox's demand was "simple harassment." *Id.* ¶ 78.

Huff, in compliance with Fox's request, submitted a revised Soil Erosion and Sediment Control Plan on April 21, 2009. *Id.* ¶ 80. The revised plan updated the amount of soil disturbance, depicted Storage Area 2 inside the disturbance line, and depicted a silt fence that had been installed prior to the use of Storage Area 2 to prevent erosion and soil movement. *Id.*

Huff alleges that internal emails[4] demonstrate that Ward kept tabs on Huff's interactions with Fox and Harding Township, using his relationship with Fox to obtain copies of Huff's and Fox's correspondence. *Id.* ¶ 82. Internal Harding Township documents show that Fox ensured that Ward received a copy of the March 11, 2009 engineering review. *Id.* Fox advised town employee Janet Doherty that "Ned Ward will be stopping by to pick up copies of these letters. Both should be in the Building Department's file for the Huff barn." *Id.* Huff did not consent to the release of the engineering review. *Id.*

Huff also alleges that during the same period NJCF, acting in concert with Harding Township, Fox, and Ward, made numerous demands on Huff regarding his renovation activities in the area of the conservation easement. *Id.* ¶ 83. Fox, Ward, and Harding Township were aware of NJCF's position because of numerous communications with NJCF representatives. They tried to influence other municipal departments by providing copies of correspondence from NJCF's counsel. *Id.* NJCF never took independent legal action, but instead coordinated with the Township behind the scenes and allowed the Township, Ward, and Fox to exert leverage over Huff. *Id.* ¶ 84.

---

[4]     Again, the 2AC does not specify how Plaintiffs got access to these documents.

Huff cites other communications as evidence of coordination among the defendants. *Id.* ¶ 85. On May 19, 2009, Fox emailed Tim Morris at NJCF a copy of Huff's revised barn plan. *Id.* ¶ 86. Fox identified specific aspects of Huff's renovations that he believed would affect the conservation easement. *Id.* Fox asked NJCF to submit a letter stating whether the activities were "acceptable." *Id.* Fox also pointed out that the barn plans included installation of a well within the conservation easement. *Id.* ¶ 88. Counsel for NJCF then sent a letter to Huff on June 15, 2009, objecting to the very same issues brought to its attention by Fox. *Id.* on July 30, 2009, Fox emailed Sieglinde Mueller of the NJCF an electronic copy of the Huff's house plan and offered to personally deliver a full-sized paper copy. *Id.* ¶ 87. On December 15, 2009, Fox emailed Tim Morris the conditional approval for the barn plan, as well as a copy of the plan itself.[5] *Id.*

Huff alleges that these disclosures about the Huff residence to the NJCF violated his privacy and security rights, and constituted abuses of authority. *Id.* ¶¶ 89-90. Huff also alleges that Fox benefited financially because his escrow account was charged for unspecified "inappropriate activities." *Id.* ¶ 90.

On September 4, 2009, Fox and Harding Township issued a Notice of Violation and summons to Huff. *Id.* ¶ 91. The Notice claimed that the temporary storage of materials was in violation of a previously certified Soil Erosion and Sediment Control Plan. No mention was made, however, of the revised plan, which Fox had received on April 23, 2009. *Id.* Huff alleges that compliance with the directives in the Notice was impossible without halting the construction altogether. *Id.* ¶ 92.  Huff also alleges that the Notice of Violation was issued after the 30 day period under state law for issuing a denial of the revised plan. *Id.* ¶ 93. Huff argues that the failure to act within 30 days amounted to a default approval. *Id.*

On October 1, 2009, Fox issued a summons and complaint for violation of section 105-104A of Harding Township's Land Use Development Ordinance ("LUDO") for disturbance of soil allegedly outside the previously-approved limit of disturbance. *Id.* ¶ 94. That provision gave Fox, as town engineer, exclusive municipal authority for determining whether there had been a violation. *Id.* ¶ 95. Huff alleges that the provision fails to set out an effective procedure for seeking relief from a decision of the Township Engineer. *Id.* Huff was allegedly

---

[5]     Huff alleges that Fox later used the proposed placement of the well as grounds to deny approval of the barn plans in his September 4 and December 15, 2009 engineering reviews. *Id.* ¶ 88.

the first and only person ever to be charged with a violation of this section of LUDO. *Id.* ¶ 96.

Huff filed a motion to transfer the municipal court prosecution of the October 1, 2009 complaint from Harding Township to Superior Court in Morristown. The municipal judge agreed to transfer the case, noting the "extensive involvement" of Committeeman Ward, and noting that Ward would be involved in the appointment of the municipal prosecutor during the following month. *Id.* ¶ 97.

Then, in October 2010, Harding Township issued additional denials of Plaintiff's construction-related petitions. On October 18, 2010, the town Health Department denied an application to drill a new well on the property, primarily because the well was located within the conservation easement. *Id.* ¶ 98. Huff points out that the Health Department was among the municipal departments that had received the NJCF's letter stating its position on the conservation easement from Fox. *Id.*

Around the same time, Huff filed an action in New Jersey Superior Court against Fox and Harding Township related to the renovations on his property. *See* 2AC ¶ 99. After over 18 months of litigation, that action was settled by agreement (the "2011 Settlement Agreement"). (Docket No. 51-4). *Id.* ¶ 99.[6] As part of the settlement, Huff dismissed his Superior Court complaint, and the Municipal Court Summons against Huff was likewise withdrawn. 2011 Settlement Agreement at 2. The Township agreed that it would refrain from and discontinue "incorporating, utilizing, or conditioning review" of any Soil Erosion and Sediment Control Plans, or any other construction-related permits or approvals, on the terms and conditions of the conservation easement. *Id.* Huff agreed to submit any such plans to Harding for its review and approval prior to performing any "regulated soil disturbance work" associated with the house

---

[6]     Although the 2AC does not state the particulars of this action, the 2011 Settlement Agreement (Docket No. 51-4) reveals that it was *Huff v. The Township of Harding and Paul D. Fox, Harding Township Consulting Engineer,* No. MRS-L-3340 10 PW (Superior Court of New Jersey, Law Division, Morris County). The Court takes judicial notice of the 2011 Settlement Agreement, attached to the Harding Defendants' motion to dismiss, because its authenticity is not disputed and Plaintiffs rely on it in the Complaint. *See Pension Benefits Guar. v. White Consol. Indus, Inc.,* 998 F.2d 1192, 1195 (3d Cir. 1993). Also attached is a stipulation of dismissal with prejudice of *Township of Harding v. Huff,* No. MRS-L-493-10 (Superior Court of New Jersey, Law Division, Morris County), filed on June 30, 2011.

and barn renovations. *Id.* Huff alleges that Harding Township dropped its objection to the well permit based on the conservation easement, and ultimately issued a permit for the drilling of the well. 2AC ¶ 99.

On April 8, 2011, the parties filed a Stipulation of Settlement Without Prejudice, "in reliance upon the terms and conditions set forth on the attached Settlement Agreement Term Sheet." (Docket No. 51-4). On June 30, 2011, in accordance with the agreement, the parties filed a Stipulation of Dismissal With Prejudice of an action brought by the Township against Huff (apparently the October 1, 2009, complaint, originally in municipal court). *Id.*

Almost immediately after that 2011 Settlement, Fox issued an engineering review demanding that Huff seek a determination from the NJDEP that the planned renovation of his home did not constitute a "major development" for purposes of storm water management regulations. *Id.* ¶ 100. (Huff's home was being renovated at the same time as the barns. *Id.* ¶ 101.) Between 2007 and 2011, Huff had already sought and obtained several determinations from NJDEP regarding his renovation activities. *Id.* These included three Freshwater Wetlands General Permits, three Flood Hazard permit-by-rule determinations, a determination from the NJDEP Enforcement office, and a July 11, 2011 determination from the NJDEP. *Id.* Huff alleges that the renovation could not have constituted a "major development" because, if it were, the NJDEP would not have issued those determinations. *Id.*

The background to the "major development" issue is that on October 15, 2010 (before the 2011 Settlement), Harding Township and Fox submitted an objection to the NJDEP in connection with one of Huff's "permit-by-rule" notifications, arguing that the renovation did constitute a "major development." Huff alleges that the NJDEP did not accept that contention. *Id.* ¶¶ 102-03. Huff alleges that Fox knew that compliance with the "major development" regulations would mean additional construction delays, and additional engineering review charges payable to Fox and Apgar. *Id.* ¶ 103. The reviews allegedly served no legitimate purpose and were a pretext for interfering with Huff's renovations. *Id.* ¶ 104. Earlier, in 2009, Fox allegedly approved a similar application involving a steep slope and did not conclude that the project was a "major development." *Id.*

Fox allegedly made numerous OPRA requests to the NJDEP to obtain more information from Huff's file. *Id.* ¶ 105. Huff alleges that Fox also encouraged and assisted NJCF with its submission of a letter to the NJDEP

objecting to the issuance of requested general permits related to underground utility trench excavation. *Id.*

In April 2011, Huff offered to streamline the engineering review by having his expert environmental consultant speak to Fox and Harding Township attorney Laura Lande. *Id.* ¶ 106. Huff says that, during that conversation, his expert "proved" that Huff's analysis was the correct one. *Id.* Fox stated that he and Harding Township had pleaded the case to the NJDEP, which was the "final arbiter on that matter," and that they were prepared to "let the chips fall where they may." *Id.* (It was during that month that Fox, Harding Township, and Huff settled Huff's state court suit and the municipal violation charge in the 2011 Settlement Agreement (filed April 8, 2011)).

Then, on June 21, 2011, despite the intervening 2011 Settlement, Fox issued another engineering review letter. That letter again demanded that Huff obtain the NJDEP's ruling that the renovation was not a "major development." 2AC ¶107. Fox then threatened to issue a Notice of Violation and a ticket. *Id.*

In July 2011, Huff filed another lawsuit in state court. *Id.* ¶¶ 31, 108; Pl. Letter Ex. A, July 2011 Compl., *Ecotone Farm, LLC v. The Township of Harding*, No. L-002061-11, (Superior Court of New Jersey, Law Division, Morris County) (Docket No. 89-1). In that prerogative writ action, Huff sued Harding Township for injunctive and declaratory relief related to the breach of the 2011 Settlement Agreement by the Township (through Fox); Fox's interference with NJDEP approvals; Fox's alleged conflict of interest relating to Huff's renovations; grading permits for Huff's renovations; and reimbursement of Huff for the grading permits.[7] Pl. Letter Ex. A, ¶¶ 105-141.

---

[7]     At the time of this Amended Opinion's filing, the state court action filed in July 2011 was still open. The last filings on the case's docket sheet indicated that two orders for partial summary judgment were entered on January 11, 2013 and May 20, 2013. Pl. Letter Ex. C, Docket Sheet (Docket No. 89-3). The May 20, 2013 Order granted Huff partial summary judgment on Count 3, his common law conflict of interest claim. *See* Pl. Reconsideration Motion Ex. B (Docket No. 88-4). State Superior Court Judge Thomas L. Weisenbeck ruled that Fox had a fatal conflict of interest regarding the NJCEF. Judge Weisenbeck ordered that Fox be disqualified from serving as the Township Engineer in connection with Huff's land use applications, and ordered that the Township designate a replacement engineer to review any such applications. *Id.* The case docket sheet does not indicate that the court has entered judgment as to any other claims.

On July 12, 2011, Huff obtained another determination from the NJDEP that the renovation did not constitute a "major development." *Id.* In November 2011, Fox unilaterally contacted the NJDEP about the "major development" issue. The NJDEP told Fox on November 18, 2011, that the renovation was not subject to "major development" enhancements. *Id.* ¶ 109. Huff alleges that Fox's repeated attempts to raise the "major development" issue demonstrate his general, abusive efforts to "crush" Huff's property rights with "municipal power." *Id.*

Huff alleges that Fox and Apgar have been kept in power by the efforts of Ward, Harding Township, and the Township Committee, who used a no-bid process to control the Harding engineering department. *Id.* ¶¶ 9, 53. At a January 13, 2012 reorganization meeting, the Township Committee allegedly rebuffed "numerous citizen requests" that the municipal engineer position be opened to competitive bidding. *Id.* At that meeting, Defendant Bartlett, who chairs the Township Committee, refused to delay Fox's reappointment. Huff claims Bartlett did so to protect his personal interests and other Defendants' positions in litigation with Huff. *Id.* ¶ 10. Bartlett allegedly stated at the meeting that "we feel that it would adversely affect our position in the litigation to change"[8] and that "because of all the lawsuits, I think it would be a mistaken not to go ahead with the appointment tonight." *Id.* Huff further alleges that all the individual Defendant committee members had knowledge of Fox's "abusive conduct," and heard evidence of such at the meeting, but that each of these Defendants rejected the evidence and approved Fox's reappointment. *Id.* ¶ 11.

## C. Procedural History of This Action

Ecotone Farm LLC filed the original complaint in this Court on September 1, 2011, and the case was assigned to Hon. Dennis M. Cavanaugh. (Docket No. 1). On March 2, 2012, before Defendants had filed a responsive pleading or motion, an Amended Complaint was filed. (Docket No. 12). On April 13 and April 17, 2012, Motions to dismiss the Amended Complaint were filed by Defendants Bartlett, Egea, Harding Township, Lanzerotti, Platt, Rybka, Edward Ward, (collectively, the "Harding Defendants"); Sally Ward; the NJCF; and Apgar Associates and Paul D. Fox. (Docket Nos. 14, 15. 16, 17).

---

[8]    The 2AC does not specify which litigation Bartlett is speaking about. The 2010 state court lawsuit had been settled in April 2011, but both the state court lawsuit filed in July 2011 and this federal lawsuit, filed in September 2011, would have been pending in January 2012.

Those motions to dismiss had not been decided on August 1, 2012, when the case was reassigned from Judge Cavanaugh to me. (Docket No. 35). Magistrate Judge Hammer then granted Plaintiff's motion to add Huff as a plaintiff and granted leave to amend the complaint a second time. (Docket Nos. 44, 45). The 2AC was filed on February 22, 2013 (Docket No. 46). Defendants' pending motions to dismiss the now-superseded Amended Complaint were administratively terminated.

All Defendants have now moved to dismiss the 2AC. The NJCF moved to dismiss the 2AC on February 22, 2013 (Docket No. 47). Sally Ward renewed her earlier motion to dismiss on March 6, 2013. (Docket No. 49). The Harding Defendants moved to dismiss the 2AC on March 7, 2013. (Docket No. 51). Fox and Apgar moved to dismiss the 2AC on March 12, 2013, relying on the submissions of the other Defendants. (Docket No. 53).

## II.  DISCUSSION

The 2AC contains fifteen counts: (1) violation of substantive due process pursuant to 42 U.S.C. § 1983 against the Harding Defendants and Fox; (2) violation of equal protection clause pursuant to Section 1983 against the Harding Defendants and Fox; (3) deprivation of procedural due process pursuant to Section 1983 against the Harding Defendants and Fox; (4) conspiracy to violate constitutional rights pursuant to 42 U.S.C. § 1985(3) against all individual Defendants; (5) violations of substantive due process under the New Jersey Constitution against the Harding Defendants and Fox; (6) violations of due process under the New Jersey Constitution against the Harding Defendants and Fox; (6) violations of procedural due process under the New Jersey Constitution against the Harding Defendants and Fox; (7) violations of equal protection under the New Jersey Constitution against the Harding Defendants and Fox; (8) unjust enrichment against Fox and Apgar Associates; (9) civil conspiracy against all individual Defendants; (10) for declaratory judgment as to the authority of the NJCF regarding the conservation easement; (11) prima facie tort against all Defendants; (12) malicious prosecution against Harding Township and Fox; (13) abuse of process against Harding Township and Fox; (14) for declaratory judgment against Edward and Sally Ward regarding interference with the driveway easement; and (15) breach of settlement agreement against Sally Ward.

The Defendants' briefs in support of the motions to dismiss contain a variety of arguments pursuant to Fed. R. Civ. P 12(b)(6), which provides for dismissal where a complaint does not state a claim for relief. To state a valid

13

claim for relief, a complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed R. Civ. P. 8(a). The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in favor of the Plaintiff. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

I begin my discussion with the Defendants' arguments that bear on the federal law claims in the 2AC, as they are the source of the Court's subject-matter jurisdiction in this case. 28 U.S.C. § 1331.

## A. Statute of Limitations for Counts One through Seven

As to counts one through seven (the federal and state constitutional claims), the Harding Defendants argue that all of Huff's allegations which date from before September 1, 2009, are barred by the statute of limitations. Harding Def. Br. (Docket No. 51-5) at 11. A limitations defense may be raised in a 12(b)(6) motion only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. United States Veterans' Administration Hospital*, 514 F.2d 1092, 1094 (3d Cir. 1975)). The applicable statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is the statute of limitations for personal injury claims in the state where the claims arose. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). All of the events alleged occurred in New Jersey, where the relevant statute of limitations is two years. N.J.S.A. 2A:14-2; *see also Montgomery v. De Simone*, 159 F.3d 120, 126 n. 4 (3d Cir.1998).

The Harding Defendants do not argue that Huff failed to allege any conduct occurring within the limitations period; clearly some of the allegations are not time-barred, even according to Defendants' view of things. Rather,

Defendants argue that "all claims that precede September 1, 2009" are untimely and cannot be revived under a continuing violation theory. Harding Def. Br. At 12, 14.

The continuing violation theory is an equitable exception to the statute of limitations. *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citing *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995)). Under that exception, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.* (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)). Courts should consider at least three factors in determining whether the violations are "more than the occurrence of isolated or sporadic acts": (1) subject matter of the violations; (2) frequency, *i.e.,* whether the acts are recurring or more in the nature of isolated incidents; (3) degree of permanence, *i.e.,* whether the act had a "degree of permanence" which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent. *Id.* (announced in context of discrimination claim).

Here, Huff is not alleging isolated events. The 2AC sets forth an ongoing pattern of interrelated, allegedly unconstitutional acts—mostly by Defendant Fox and, to a lesser extent, Harding Township. All pertain to attempts to restrain renovations and other activities on Huff's property. Plaintiffs have asserted their rights in other forums: the 2AC reveals that they settled a case with the Wards in 1998, and with Harding Township in 2011, and that other suits have been filed as well. 2AC ¶¶ 49, 99. Issues growing out of those prior lawsuits and events are pertinent here. For example, at the beginning of 2009, Defendants allegedly improperly shared records from the 1998 litigation between the Huffs and the Wards. *Id.* ¶ 67. The 2011 charge and subsequent litigation with the town, Huff alleges, was part of a larger campaign to harass Huff and prevent them from completing their renovations.

In short, the post-September 1, 2009 allegations are interrelated with the earlier alleged events, and may be appropriately considered as part of a "continuing violation." At any rate, it cannot be concluded from the face of the complaint that they are not. I will therefore deny the motion to dismiss the pre-September 1, 2009 allegations in Counts 1-7 of the 2AC on statute of limitations grounds.

15

**B. 2011 Settlement Agreement/Claim Preclusion**

The Harding Defendants have argued that claims regarding matters previously addressed by the 2011 Settlement Agreement between Harding Township and Huff (for convenience, the "pre-2011 claims") should be dismissed because Plaintiffs are attempting to "nullify" that Settlement Agreement.[9] Harding Def. Br. at 18-19. The filed Stipulation of Dismissal, incorporating the attached Settlement Agreement, explicitly covers (1) the September 4, 2009 Notice of Violation and Summons, (2) the October 1, 2009 Summons and Complaint, and (3) the October 2010 denials of Huff's construction-related applications and application to drill a new well. June 30 Opinion at 14; Stipulation of Dismissal and Settlement Agreement (Docket No. 51-4).

In my June 30 Opinion, I treated the issue as one of claim preclusion, governed by State law. *See generally Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984); 28 U.S.C. § 1738. New Jersey claim preclusion law, like federal law, has three basic elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 591 A.2d 592, 599, 124 N.J. 398 (1991) (state law); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984) (federal law). Because the pre-2011 allegations in the 2AC involved the same parties and were based on the same core of transactions and occurrences as the claims released by the Settlement Agreement, I found that they were precluded by the prior settlement. June 30 Opinion at 17.

It is the claim preclusion aspect of my June 30 Opinion that is the focus of Huff's motion for reconsideration pursuant to Local Civil Rule 7.1. Huff argues that my decision contained a "clear error of law." *See Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999). Huff has a point.

In applying claim preclusion analysis to the Settlement Agreement and dismissals of prior actions, I cited such cases as *Bernard Haldane Assoc., Inc. v. Harvard Prof'l Grp.,* 185 F.R.D. 180 (D.N.J. 1999). *Bernard Haldane* stated

---

[9]     Huff's most recent state court action (filed in July 2011) asserts a claim that Harding Township breached the 2011 Settlement Agreement. *See* Pl. Ex. A, July 2011 Compl., L 002061-11, (Docket No. 89-1).

the general proposition that "[a] settlement agreement reached between the parties has the same claim preclusive force as a judicial decree." *Id.* at 181. The authoritative treatise on federal procedure, however, disapproves the use of *res judicata* language in this context and, on reflection, I agree.

As one court put it, "an agreement may release a claim without any litigation at all. When litigation has been launched and settled, the lines between release and res judicata may become blurred." *Daignon v. Clemmey*, 322 F.3d 1, 17 (1st Cir. 2003). Consent judgments or settlement agreements, because they may bar further litigation, are often analyzed within traditional res judicata doctrines. The fit, however, is uneasy:

> It might accordingly be better to discard the res judicata vocabulary of preclusion by judgment, for fear that incomplete analogies may lead to inadequate results. Courts nonetheless persist in speaking of res judicata and collateral estoppel, or claim and issue preclusion. Little harm is done so long as the proper questions are asked, and this terminology will be employed here.

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4443 at 251. The "proper questions" pertain to whether the *res judicata* and contract-law aspects of a settlement need to be distinguished.

Properly speaking, *res judicata* focuses on the prior judgment itself. Here, the stipulation dismissing the prior state court action between Huff and Harding was "without prejudice." As Huff points out, under New Jersey Supreme Court case law, a dismissal without prejudice may lack the attributes of a final judgment on the merits for res judicata purposes. *See Velasquez v. Franz*, 589 A.2d 143, 149 (N.J. 1991).[10]

That throws us back on the Settlement Agreement itself. Where the status of a court's judgment is not final (or is ambiguous), then the issue becomes one of contract. That is, the preclusive effect of a settlement agreement, like most contract issues, will depend on the objectively expressed intent of the parties. Wright, *supra*, § 4443 at 255-56; *see Arizona v. California*, 530 U.S. 392, 414, 120 S. Ct. 2304 (2000) ("settlements ordinarily occasion no issue preclusion ... unless it is clear ... that the parties intend their agreement to have such an effect"); *Norfolk Southern Corp. v. Chevron*, 371 F.3d 1285,

---

[10]     *Velasquez* was considering the effect of a federal judgment in a state proceeding, the reverse of the situation here.

1288-90 (11th Cir. 2004). Such contractual intent may be clear, but on the other hand it may present a factual question that is not appropriate for resolution on a motion to dismiss. *See Amador County v. Salazar,* 640 F.3d 373, 384 (D.C. Cir. 2011).

The question, then, is whether these parties' contractual intent is plain from the materials properly considered on a Rule 12(b)(6) motion, or whether it can only be ascertained on summary judgment or at trial. Of course, there are many *indications* that the parties intended to retire those pre-2011 claims. They contracted to settle them. They filed that settlement in court. The obligations in the Settlement Agreement were mutual and substantial. Huff agreed, for example, to submit the Soil Erosion and Sediment Control Plans to Harding for its review and approval before he performed any soil disturbance work in connection with his house and barn renovations. Harding agreed to stop relying on the conservation easement in its review of any such plans. Harding agreed to, and did, dismiss its enforcement action against Huff with prejudice. Huff agreed to, and did, dismiss its state court action against Harding without prejudice. The reason Huff's action was dismissed "without prejudice" seems clear: as leverage to enforce performance of the Settlement Agreement by the parties. The state court, for example, agreed to place the case on the inactive list "until further Court order or until such time as construction-related DEP permits are issued to William R. Huff." Settlement Agreement (ECF 51-4) at 3. That does not necessarily, detract from its finality or bespeak an intent to keep the settled claims viable—but it might.[11]

Huff points out that the Settlement Agreement explicitly preserved certain claims between the parties. Settlement Agreement at 3. That is not to say that the Agreement left open the very claims it purported to resolve.[12] If the Settlement Agreement did not bar Huff from re-asserting the same claims against Harding Township and Fox, provided that all parties met their obligations under the Agreement, then what did it do? It does not seem

---

[11]   Huff may be saying that the Settlement Agreement was violated and that the prior claims are therefore reopened. If so, the proper forum for an action or motion to enforce the Settlement Agreement is the State court action filed in July 2011.

[12]   As noted above, those included (1) the September 4, 2009 Notice of Violation and Summons issued to Huff by Harding Township for violating municipal ordinances, (2) Huff's 2010 state court action against Harding and Fox, and (3) Harding's October 2010 denials of Huff's construction-related applications and application to drill a new well. Opinion at 14; Settlement Agreement (Docket No. 51-4).

reasonable that the Agreement permitted Huff to pocket the benefit of the bargain and refile the same lawsuit.

In that connection, I must highlight that there is state-court litigation currently pending in which Huff asserts, *inter alia,* that Harding has breached the Settlement Agreement. *Ecotone Farm, LLC v. The Township of Harding*, No. L-002061-11, (Superior Court of New Jersey, Law Division, Morris County (Docket No. 89-1). Huff has already obtained partial summary judgment to the effect that Fox may not serve as municipal attorney for permit matters involving Huff and its property. *See* p. 11, *supra*. If there is a proper forum for a claim of breach of the Settlement Agreement, that state action is it.

But all of the above analysis—however plausible—exceeds the bounds of a Rule 12(b)(6) motion. With the benefit of a factual record, Defendants might or might not be able to establish factually that the pre-2011 claims are precluded and that Huff was not entitled to assert them here in the first place. I will not, however, dismiss the claims at the pleading stage, on *res judicata* grounds. I am vacating the portion of my June 30 Opinion that dismissed the pre-2011 claims against Harding based on claim preclusion. *See* Part II.B.1, 2, and 3(a). In Parts 3(b) and (c), I found that claims against NJCEF and Sally Ward were not precluded. That result remains, although the rationale is supplemented as set forth here.

### C. Qualified Immunity

The Harding Defendants have argued that, as to the Constitutional claims in Counts 1-4 of the 2AC,[13] they are shielded by qualified immunity. Harding Def. Br. at 20. They argue that their actions did not violate clearly established law and were justified by the conservation easement, Harding's requirements for Soil Erosion and Sediment Control Plan, and Harding's Land Use Development Ordinance. Harding Def. Br. at 21.

In my June 30 Opinion, I did not analyze the qualified immunity issues in relation to the pre-2011 allegations; because those claims had already been dismissed on claim preclusion grounds, the point was moot. Because I have vacated the claim preclusion component aspect of my decision, I will now revise my Opinion to extend the qualified immunity analysis to those pre-2011 claims.

---

[13] Qualified immunity may also apply to the state constitutional claims asserted in Counts 5-7. However, I do not reach the state law claims in my analysis here.

The same or similar arguments that required dismissal of the post-2011 claims also require dismissal of the pre-2011 claims. I reaffirm my order dismissing the 2AC in its entirety.

### 1. Applicable standards

Qualified immunity issues should be resolved at the earliest possible stage of litigation in order to prevent disruption of the legitimate functions of government. *Anderson v. Creighton*, 483 U.S. 635, 626 n.6, 107 S.Ct. 3034 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727 (1982)). The Third Circuit has nevertheless cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (not precedential); *see also Schrob v. Catterson*, 967 F.2d 929, 938 (3d Cir. 1992) ("if the plaintiff's allegations are sufficient as a matter of law to avoid an immunity defense, but the defendant denies engaging in the alleged conduct, then discovery may be necessary before [the question of qualified immunity] can be resolved") (internal quotations omitted).

Qualified immunity applies where Government officials are performing discretionary functions and their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Wilson v. Layne*, 526 U.S. 603, 614, 119 S. Ct. 1692 (1999); *Harlow*, 457 U.S. at 818 (internal quotations omitted)). The relevant inquiry has two parts: (1) whether the official's conduct violated a constitutional or federal right, and (2) whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (no longer requiring courts to determine *Saucier* prongs (1) and (2) in that order); *see also Sharp v. Johnson*, 669 F.3d 144, 159 (3d. Cir. 2012); *Ray v. Twp. of Warren*, 626 F.3d 170, 174 (3d Cir. 2010). Qualified immunity applies regardless of whether the official's error presents an issue of law, an issue of fact, or a mixed question of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009) (citing *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284 (2004) (Kennedy, J., dissenting)); *Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894 (1978).

I find that the 2AC fails to allege sufficient facts to make out a violation of a federal constitutional right. My finding as to that first qualified immunity prong is really no different from a finding, under the usual Rule 12(b)(6)

standard, that the complaint does not sufficiently allege a constitutional cause of action as a matter of law. I do not reach the second, usually more fact-intensive, prong of the *Pearson/Saucier,* analysis, *i.e.,* whether the right was so clearly established that an official should have known that his or her actions would constitute a violation.

## 2. Qualified immunity of the individual Harding Defendants

As to the individual Harding Defendants, there are some particular threshold issues that bar Huff's federal claims, and I discuss them in this subsection. Also relevant, however, are the broader, substantive defects discussed in subsections II.C.4 (a) – (d), *infra,* with respect to defendant Fox.

The 2AC contains few specific facts about any of the individual Harding Defendants, except Ward. It alleges that Fox circulated information regarding the Ward/Huff litigation to "various Harding officials, including the Township attorney." *Id.* ¶ 68. No particular Committee members are named in connection with that allegation, which in any event does not set forth a Constitutional violation. Huff also alleges that the Township Committee is responsible for Fox's reappointment as municipal engineer. In January 2012, Huff alleges, the Township Committee rebuffed requests that Fox's position be opened up to competitive bidding. 2AC ¶¶ 9, 53. Committee Member Bartlett allegedly stated that, because of ongoing litigation with Huff, the Township should not delay Fox's reappointment.[14] *Id.* ¶¶ 10, 11.

Taking these facts as true, they do not rise to the level of stating a Constitutional cause of action against Bartlett or, *a fortiori,* against the other Committee members. The only specific allegation regarding Committee members pertains to the 2012 meeting. That meeting occurred after any alleged conduct by the Defendants against Huff. Huff does not allege that he suffered any particular injury as a result of Fox's reappointment. And he fails to make a convincing assertion that the appointment procedures are of Constitutional dimension.

As to Ward, too, there are not sufficient allegations to support a constitutional violation.

---

[14]   Defendants assert that these statements are protected by the absolute litigation privilege. Harding Def. Br. at 22. Because this Opinion does not reach the state law claims in the 2AC, I do not discuss that argument.

Most of Huff's specific allegations against Ward fail as Section 1983 claims because they concern Ward's conduct as a private citizen or property owner. The plaintiff in a Section 1983 action must establish that the defendant acted "under color of state law." 28 U.S.C. § 1983; *Munoz v. City of Union City*, 481 F. App'x 754, 761 (3d Cir. 2012) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)); *accord Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S. Ct. 449 (1974). When the defendant is a private party, the plaintiff must show "a sufficiently close nexus" between that private party's actions and the state to warrant treating them as state actions.[15] *Munoz*, 482 F. App'x at 761 (citing *Kost*, 1 F.3d at 184). And even when this nexus exists, qualified immunity may still apply. *Filarsky v. Delia*, __ U.S. __, 132 S. Ct. 1657, 1666, (2012).

Huff's allegations extend back to prior litigation in the 1990's after Ward destroyed a speed bump and dumped the rubble on Huff's property.[16] *Id.* ¶ 47. Then, in mid-2001, Huff alleges, Ward complained to the Harding health department regarding drainage work on Huff's property. *Id.* ¶ 51. In November 2008 and January 2009, Ward allegedly complained to the Harding police department about the safety of Huff's construction in the driveway easement area. *Id.* ¶ 59. In short, Ward complained. The 2AC does not allege, however, that the police department or health department engaged in any official misconduct as a result. These allegations set forth disputes among private citizens, not unconstitutional official action.

As to Ward's conduct in his capacity as a Committee member, the allegations dwindle to almost nothing. Huff generally alleges "upon information and belief" that Ward used Fox to complain to the NJCF, harass Huff, and interfere with his renovations. *See id.* ¶¶ 51, 74, 77. Huff complains that Ward was given copies of correspondence between Huff and Fox. No specific misconduct, improper exploitation of that correspondence, or injury is alleged. *Id.* ¶ 82.

These allegations against Ward do not state a constitutional cause of action. Complaining to local authorities about a neighbor's construction does

---

[15]     The requisite nexus exists in three circumstances: (1) the private party performed a function typically performed by the State; (2) the private party acted in concert with the State; or (3) the State has become interdependent with the private party. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

[16]     That litigation was settled in May 1998. It is not related to the more recent renovations that are the crux of Huff's claims here.

not constitute a Constitutional violation. Without more, it does not even implicate official action. Huff's conclusory allegations, "on information and belief," that Fox acted at Ward's bidding when he interfered with Huff's renovations are insufficient. It is not enough to simply posit that one person is answerable for the acts of another. The Complaint must plausibly, factually allege the "personal involvement" that is required for a viable Section 1983 claim. *Parratt v. Taylor*, 451 U.S. 527, 537 n.3, 101 S. Ct. 1908, 1913 n.3 (1981); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (requirement that "personal direction or … actual knowledge and acquiescence" be alleged "with the required particularity").

In short, the 2AC fails to allege that any of the individual Harding Defendants violated federal statutory or constitutional rights, that there was state action, or that they had the required personal involvement in any violations that arguably occurred. The first prong of the *Pearson/Saucier* analysis—whether a constitutional violation has been alleged at all—is not satisfied as to the Individual Harding Defendants. The Section 1983 claims in Counts 1 through 4 are therefore dismissed as to the individual Harding Defendants: Ward, Bartlett, Lanzerotti, Egea, Rybka, and Platt.

### 3. Qualified immunity of Harding Township

The 2AC similarly fails to set forth a municipal liability claim against Harding Township under Section 1983. In addition to the factual allegations discussed above in the context of the individual Harding Defendants, Huff generally alleges that the Township, with Fox, interfered with his property by denying him permits and approvals for his renovations. *See, e.g.,* 2AC ¶¶ 75, 106, 107. Specifically, Huff alleges that the Township issued a Notice of Violation on September 4, 2009, concerning Huff's storage of materials on his property in violation of a previously approved Soil Erosion and Sediment Control Plan. *See id.* ¶¶ 91-92. Huff alleges this Notice of Violation was issued untimely, after the deadline for denial of his revised plan.[17] *Id.* As memorialized in the 2011 Settlement Agreement between Huff, Harding Township, and Fox, that Notice of Violation was dropped in exchange for the dismissal of Huff's state court action. *See* Docket No. 51-4; 2AC ¶ 99. After the 2011 Settlement, Huff alleges, Harding Township continued to interfere with his renovations *via* Fox's submission of objections to NJDEP. 2AC ¶ 102.

---

[17]    Huff alleges that Fox had the sole authority to determine whether there had been a violation. *Id.* ¶ 95.

There is no *respondeat superior* or vicarious municipal liability under Section 1983. Municipal liability under Section 1983 requires that the constitutional violation have occurred pursuant to an official municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 701, 98 S.Ct. 2018 (1978); *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990). The 2AC generally alleges that the Defendants acted "pursuant to a municipal policy, custom, and practice." 2AC ¶¶ 116, 122. But that is legal boilerplate—a "formulaic recitation of the elements of a cause of action" like the one held inadequate in *Twombly*, 550 U.S. at 555. The Third Circuit has recently reaffirmed that failure to plead facts in support of a *Monell* theory requires dismissal. *Hildebrand v. Allegheny County*, No. 13-1321, slip op. at 21-23 (3d Cir. June 27, 2014).

Plausible supporting factual allegations are absent from this Complaint. A municipal "policy" must exist and be promulgated in some form, but the 2AC contains no specific allegation as to the existence or contents of any such policy. The "custom" theory requires that decision-makers were aware of similar unlawful conduct in the past, that they failed to take precautions against further violations, and that this failure caused the plaintiff's injury. *Bielevicz*, 815 F.2d at 851. While the allegations in the 2AC suggest that certain Harding Township officials knew about, *e.g.*, Fox's conduct, there are no specific allegations establishing that the Township either failed to take precautions against further violations, or that this failure caused the plaintiff's injury.

Counts 1-4 will be dismissed as to Harding Township, on these grounds as well as the substantive grounds discussed in relation to Fox, *see* Section II.C.4 (a) – (d), *infra*.

### 4. Qualified Immunity of Fox

Fox adopts the qualified immunity arguments of the Individual Harding Defendants, who, like him, were Township officials. He did not submit a separate brief. *See* Corson Certification (Docket No. 53-1). I have chosen, however, to focus on the most substantive grounds for dismissal here, in connection with Fox, because the 2AC's allegations against Fox are the most detailed and specific. The substantive grounds stated here, however, would also furnish alternative grounds for dismissal of the claims against the other Harding Defendants.

Huff alleges that Fox violated Huff's substantive and procedural due process rights, and denied him equal protection. 2AC ¶¶ 111-128. The 2AC

alleges that Fox began interfering with Huff's property rights as early as 2002, when, "on information and belief," Fox contacted the NJCF and falsely reported that Huff was "interfering" with the conservation easement on Huff's property. *Id.* ¶ 52. Huff alleges that Fox and Ward "ramp[ed] up" efforts to impede the renovation in January 2009. Fox allegedly obtained court and settlement documents regarding the ingress/egress litigation from Ward. *Id.* ¶ 67. Fox reviewed the records and circulated his notes to "various Township officials." *Id.* ¶ 68. His correspondence allegedly stated that he planned to condition engineering approval of Huff's renovation plans on obtaining Ward's permission to conduct certain activities in the driveway area. *Id.* Subsequently, Fox sent Huff an engineering review letter on March 11, 2009, directing him to submit a new Soil Erosion and Sediment Control Plan. *Id.* ¶ 73. In that letter, Fox allegedly stated that he would not approve any driveway improvements that fell within both the conservation easement and Ward's ingress/egress easement, and that any plans Huff submitted must state that the driveways would not be blocked and would be kept clean. *Id.* ¶¶ 75, 76, 78, 79. Huff alleges that these terms were unreasonable. *Id.* ¶ 76.

Huff also alleges that Fox repeatedly reached out to NJCEF in 2009 to obtain its assistance in stopping Huff from moving forward with his renovations. *Id.* ¶¶ 86, 87. Fox allegedly asked NJCEF whether Huff's renovations were permissible under the conservation easement. *Id.* Fox also kept NJCEF apprised of the litigation between the Township and Huff. *Id.* ¶ 87.

Huff also alleges that Fox was responsible for the September 2009 Notice of Violation because he had the sole authority to determine whether the town ordinance had been violated. *Id.* ¶ 95. As discussed above, the Notice of Violation was dismissed as a result of the 2011 Settlement Agreement, and presumably it remains dismissed.

On June 21, 2011, after the 2011 Settlement Agreement was filed, Fox allegedly sent Huff another engineering review letter. 2AC ¶ 107. Fox also continued to demand that Huff obtain multiple determinations from the NJDEP that the renovations did not constitute "major renovations." When it appeared that such determinations had been made, Fox contacted NJDEP himself. *Id.* ¶¶ 108-109. Consistent with its prior determinations, NJDEP informed Fox that the renovation was not subject to "major development" requirements. *Id.* ¶ 109.

I analyze separately the federal Constitutional claims alleged in Counts One through Four. For the reasons stated below, I find that they do not state a Constitutional claim.

### a. Substantive due process (Count 1) as to Fox

Count 1 alleges that Fox (along with the Harding Defendants) took actions that were arbitrary, capricious, not rationally related to any legitimate government interest, improperly motivated, and conscience-shocking. Those actions were designed, Huff says, to harm him and deprive him of the legal and proper use of his property and the right to be free of government coercion. 2AC ¶¶ 115-116. The facts alleged, however, do not make out a violation of Huff's substantive due process rights.

Not surprisingly, real property ownership is a protected property right under the substantive due process clause. *DeBlasio v. Zoning Bd. Of Adjustment*, 53 F.3d 592, 600 (3d Cir. 1995) (abrogated on other grounds by *United Artists, infra*). Even as to protected property rights, however, only State conduct that "shocks the conscience" violates substantive due process standards. *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 402 (3d Cir. 2003). Overruling prior cases applying a lesser standard, *United Artists* held that an "improper motive" is not sufficient to transform a municipal land-use dispute into a substantive due process claim. *Id.* The "shocks the conscience" standard, applicable to other kinds of substantive due process claims, limits liability to the most egregious conduct and prevents the federal court from becoming a "zoning board of appeals." *Id.* at 401-02.

*United Artists* forecloses Huff's claim here. The relevant allegations against Fox—that he issued unreasonable engineering review letters, attempted to coordinate with the NJCEF regarding the conservation easement, and took an unseemly personal interest in NJDEP's finding that Huff's renovation was a "major development"—do not constitute conduct that "shocks the conscience." Huff repeatedly alleges that Fox, and the other Defendants, improperly delayed and interfered with Huff's renovations because of personal interests and biases. *See e.g.* 2AC ¶¶ 64-65, 78-79, 86, 90.

Each of these is exactly the kind of claim—an erroneous land use decision, plus "improper motive"—ruled out by *United Artists*. Count 1 recites the "shocks the conscience" standard, 2AC ¶¶ 115, 117, a "formulaic recitation of the elements of a cause of action" that, without more, does not satisfy pleading standards. *Twombly*, 550 U.S. at 555. The Complaint's factual allegations fall far short of establishing a plausible factual basis for such a claim. *See United Artists*, 316 F.3d at 402 (citing cases where no violations were found for state actors acting arbitrarily, in bad faith, or on the basis of

unlawful motives); *Lindquist v. Buckingham Twp.*, 106 F. App'x 768, 774 (3d Cir. 2004) (not precedential).

Fox's alleged conduct does not make out a substantive due process claim. Huff cannot satisfy the first prong of the *Pearson/ Saucier* analysis and Fox is entitled to qualified immunity as to Count 1 of the 2AC.

### b. Equal Protection (Count 2) as to Fox

Count 2 of the Complaint alleges that Fox (and the Harding Defendants) took actions that were "discriminatory, arbitrary, capricious, unreasonable, malicious, improperly motivated and conscience-shocking," in violation of the Equal Protection clause. Huff does not facially challenge any ordinance or policy, but challenges the manner in which Defendants applied and enforced local law. The Complaint generally alleges that Huff's property was treated worse than other "proximate and/or similarly situated properties." 2AC ¶ 123. In particular, Fox allegedly abused his power by issuing an engineering review letter on March 11, 2009, and June 21, 2011, by issuing a Notice of Violation in September 2009, and by contacting the NJDEP in an unsuccessful attempt to coax forth a determination that Huff's renovations constituted a "major development." 2AC ¶¶ 107-109.

Huff does not allege that he is a member of any protected class. He asserts a "class of one" theory, *i.e.,* that he has been intentionally treated differently from other similarly situated persons without a rational basis.[18] *Village of Willowbrook v. Olech*, 528 U.S. 562, 565, 120 S. Ct. 1073 (2000) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cnty.*, 488 U.S. 336, 109 S.Ct. 633 (1989)). This Circuit has held that, in order to make out such a claim, a plaintiff must allege that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "No rational basis" is a very forgiving standard, from a defendant's point of view; the claim is a difficult one to allege or prove. *See Eichenlaub v. Twp. of Indiana*,

---

[18]    "Class of one" should not be taken to suggest there can be one and only one plaintiff or injured party. The term is intended to differentiate such a claim from, for example, a claim of racial discrimination brought on the basis of the plaintiff's membership in a protected class.

385 F.3d 274, 287 (3d Cir. 2004) (citing *Willowbrook*, 528 U.S. at 565-66, Breyer, J., concurring)).

The 2AC does not sufficiently allege that Huff was intentionally treated differently without a rational basis. It contains only one relevant factual allegation of disparate treatment of other land owners. Allegedly, no other Harding resident had ever been charged with violating Section 105-104A of the Township's Land Use Development Ordinance. *Id.* ¶¶ 94-96. (The violation asserted against Huff for disturbing soil outside a previously-approved limit of disturbance.) That allegation, even if credited, is insufficient to show arbitrary or irrational action by the Township or Fox. *Someone* has to be first; it cannot be a *per se* Constitutional violation to apply a particular section of an ordinance for the first time. The conduct of which Huff was accused appears to fall within the scope of Section 105-104A, which addresses soil disturbance outside previously-approved limits. *See id.* ¶ 94. Nothing about its application appears on its face to be arbitrary or irrational. The Harding Defendants plausibly cite the local land use law, as well as the Township's requirements regarding Soil Erosion and Sediment Control Plans, as bases for the action against Huff. Def. Br. at 21. Huff does not allege that other residents were not subject to the same Soil Erosion and Soil Control Plan requirements underlying Section 105-104A. Overall, the allegations are not sufficient to show intentional, arbitrary treatment. *See Willowbrook*, 528 U.S. at 565 (finding sufficient allegations of intentional, disparate treatment where facts were alleged showing town had made lesser demands on other property owners).

Huff makes other allegations of disparate treatment. He fails, however, to identify any similarly situated individual who was not similarly subjected to Harding's engineering reviews and the NJDEP determinations. *See id.* (citing *Levenstein v. Salafsky*, 414 F.3d 767, 776 (7th Cir. 2005)).

The factual allegations in Huff's 2AC do not support an equal protection violation. Qualified immunity shields Fox as to Count 2.

### c. Procedural due process (Count 3) as to Fox

Huff contends that Defendants' construction, interpretation, application, and enforcement of municipal ordinances constituted an arbitrary exercise of discretion for unlawful purposes. Count 3 of the 2AC alleges that Fox (and the Harding Defendants) thereby deprived Huff of liberty and property interests without due process of law. 2AC ¶ 128.

28

To establish a procedural due process violation under the Fourteenth Amendment, the plaintiff must first allege facts that a person acting under color of state law deprived it of a protected interest. It is not controversial that real property ownership may constitute a protected property right.[19] *See Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 679 (3d Cir. 1991) (abrogated on other grounds by *United Artists, supra*). Second, the plaintiff must set forth facts alleging that the state procedure for challenging the deprivation did not satisfy minimum procedural requirements. *See e.g. Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981); *Midnight Sessions,* 945 F.2d at 680; *John E. Long, Inc. v. Borough of Ringwood,* 61 F. Supp. 2d 273, 278 (D.N.J. 1998), *aff'd,* 213 F.3d 628 (3d Cir. 2000). That is, the plaintiff must allege that the local and state procedures for challenging the deprivation are inadequate. *Miles v. Twp. of Barnegat,* Civ. No. 05-1661 (JAP), 2008 WL 89910, at * 6 (D. N.J. Jan. 7, 2008).

The 2AC fails to make out a procedural due process claim. Most pertinently, and fatally, the 2AC contains no allegations that the state procedures for challenging the deprivation of Huff's property rights are inadequate. The 2AC does not even refer to, let alone describe, state or local review procedures. Nor does the complaint explain why such procedures could not redress these alleged wrongs. Such allegations are not "sufficient to raise a plaintiff's right to relief above a speculative level." *Twombly,* 550 U.S. at 570.[20]

Accordingly, Huff has failed to sufficiently allege a procedural due process violation to satisfy the first *Pearson/Saucier* prong. Fox is thus also protected by qualified immunity as to Count 3.

### d. 42 U.S.C. § 1985(3) conspiracy (Count 4) as to Fox

---

[19]    Huff has failed to allege, even generally, facts showing a deprivation of a liberty interest.

[20]    In addition, the "deprivation" Huff suffered as a result is not clear. Although Huff generally alleges that his renovations were delayed, that the delays cost him money, and that his use of the property was impaired, no specific facts are pleaded. Fox issued the last engineering review letter on June 21, 2011. But after Fox contacted the NJDEP in November 2011, Huff alleges, Fox was "forced to relent and abandon [his] unsupportable position" regarding the renovation. 2AC ¶¶ 107-109. In the interim, this lawsuit was filed.

29

Count 4, Huff's conspiracy claim under Section 1985(3), fails to allege a factual or legal basis for the liability of Fox (or the Harding Defendants). Section 1985 provides a cause of action for the victim of a conspiracy motivated by race, gender, or other invidious class-based discrimination. *Farber v. City of Paterson*, 440 F.3d 131, 138 (3d Cir. 2006). To support a Section 1985 claim, the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) a resulting injury to person or property, or deprivation of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983). The discriminatory animus required in the second element must be "class-based invidiously discriminatory animus." The purpose and effect of a violation must be to prevent the victim from enjoying "*equality* of rights as contrasted with his and other citizens' rights." *Farber*, 440 F.3d at 135 (emphasis added).

Huff's allegations do not support a claim for conspiracy motivated by a class-based, invidiously discriminatory animus. Section 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence "independent of the fact that its members are victims of the defendants' tortious conduct." *Farber*, 440 F.3d at 136. There is no indication in the 2AC that Huff is a member of an identifiable class, or that the alleged conspiracy was motivated by a desire to discriminate against members of any such class. *See id.* at 137 (finding district court erred by concluding that plaintiff alleged sufficient class-based animus). Huff's claim that the Defendants interfered with his property rights is not one that is cognizable under Section 1985.

Huff's allegations do not make out a Section 1985 violation and the motion to dismiss is granted as to Count 4.

In short, although there are allegations of wrongful intent or conduct not in accordance with state standards,[21] no federal constitutional violation has been sufficiently alleged.

### D. The State Law Claims

---

[21]     *See* p. 11 & n.7, *supra.*

The remaining counts in the 2AC, alleging violations of State law, are dismissed in their entirety for lack of jurisdiction.[22] The Complaint invoked this Court's original federal-question jurisdiction because Huff's Section 1983 and 1985(3) claims arise under the Constitution and laws of the United States. *See* 28 U.S.C. § 1331. Those claims are now dismissed, and diversity of citizenship is absent. *See* 28 U.S.C. § 1332. The remaining state law claims could remain in the case only pursuant to the court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. When a court has dismissed all claims over which it had original jurisdiction, the supplemental jurisdiction statute grants the court discretion to dismiss the remaining state-law claims. 28 U.S.C. § 1367(c)(3).

My decision to dismiss the remaining state law claims is based on several considerations. There is no substantial federal question presented in the 2AC and there has not been a substantial investment of federal-court resources in adjudicating the state law claims. The significance of those factors might have been offset somewhat if Huff possessed no other recourse against Defendants, but that is emphatically not the case. Huff has freely resorted to New Jersey State Court. Set forth above are prior state-court actions arising from the same nucleus of facts. *See* Section I, Background, pp. 2-12, *supra*.

Even more to the point, Huff filed another action in New Jersey Superior Court just two months before this federal lawsuit was filed. There is no reason that Huff's remaining claims could not be fully adjudicated in state court, in that action or another.[23] Indeed, State court is by far the more appropriate forum for local land-use disputes like the one presented here.

For these reasons, having dismissed the federal claims in the 2AC, I will exercise my discretion to decline supplemental jurisdiction over the remaining state law claims. Counts 5-15 will therefore be dismissed.

---

[22]   Some of these claims may also be subject to dismissal on other grounds, but it is unnecessary to reach those alternative arguments.

[23]   As discussed above, at p. 11 n.7, the state court action is still pending. Partial summary judgment in favor of Huff was entered on May 20, 2013. Pl. Letter Ex. C, Docket Sheet (Docket No. 89-3). All of the 2AC's claims, including the federal constitutional claims if they were viable, could be adjudicated in state court. *See Martinez v. California,* 444 U.S. 277, 283 n.7, 100 S. Ct. 553, 558 n.7 (1980); *Maisonet v. New Jersey Dep't of Human Servs., Div. of Family Dev.,* 140 N.J. 214, 657 A.2d 1209, 1212 (1995). Indeed, Huff's splitting of his causes of action between state and federal actions, filed within months of each other, has created the potential for procedural confusion and waste of judicial resources. If the federal claims were viable, I would seriously consider staying them pending the outcome of the state proceedings.

### III.   CONCLUSION

For the foregoing reasons, no claim for relief remains in the 2AC, and it will be dismissed in its entirety. For the reasons stated above, the federal claims are fatally defective, and the bases for dismissal are not likely to be repaired by amendments to the pleadings.

Out of caution, however, I will enter this dismissal without prejudice to Plaintiffs' submission of a properly supported motion to amend the 2AC within 30 days. If no such motion is received, this dismissal will become final

An Order will be entered in accordance with this Opinion.

**Kevin McNulty**
**United States District Judge**

Dated: July 23, 2014